NO. 07-08-0451-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 20, 2009
______________________________


BRYAN S. HALL, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant

v.

XCEL ENERGY, INC., SOUTHWESTERN PUBLIC SERVICE 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â COMPANY d/b/a XCEL ENERGY and DWAYNE MARCHBANKS,

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellees

_________________________________

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 94392-A; HON. RICHARD DAMBOLD, PRESIDING

_______________________________

On Motion for Rehearing
______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Â Â Â Â Â Â Â Â Â Â Pending before the court is the motion for rehearing of Bryan S. Hall. The latter
contends that we erred in concluding that he failed to address, on appeal, each ground
upon which the trial court could have based its summary judgment. The ground that we
noted as being unaddressed involved whether the Workersâ Compensation Act provided
him his exclusive remedy against Xcel Energy, Inc. Hall now posits that he covered the
matter via one sentence appearing in a footnote on page two of his brief. The footnote in
question states:
Although the state of the summary judgment record is not altogether clear 
on this point, for purposes of this appeal, Hall concedes that he did indeed 
receive workers compensation benefits and that these benefits were likely 
paid on behalf of his likely employer, SPS. Accordingly, Hall is not
contesting the applicability of the âexclusivity barâ as to SPS and Marchbanks
and agrees with Appelleesâ contention that the bar would and could not
otherwise be applied to Xcel Energy, Inc. â as it has no employees.
Â 
(Emphasis added). We find this footnote and the basis underlying his motion for rehearing
insufficient reason to change our prior decision.
Â Â Â Â Â Â Â Â Â Â First, and at the very least, Hall implicitly concedes the accuracy of one aspect of
our opinion. To the extent he âagree[d] with Appelleeâs contention that the bar would and
could not otherwise be applied to Xcel Energy, Inc.,â he recognized, by the time he filed his
appellate brief, that the argument was a ground asserted in the motion for summary
judgment. Having so recognized it, he had the duty to explain why it could not have formed
the basis for the trial courtâs decision. Lyco Acquisition 1984 Ltd. Partnership v. First Nat'l
Bank, 860 S.W.2d 117, 119 (Tex. App.âAmarillo 1993, writ denied).
Â Â Â Â Â Â Â Â Â Â Second, and at best, the footnote can be read as a somewhat equivocal comment
that the Workersâ Compensation Act did not apply to Xcel Energy.


 Yet, that purported
concession came during appeal. By then, Hall already had expended great effort in trying
to convince the trial court that he was indeed an employee of Xcel. So too had he provided
the trial court with a litany of âevidenceâ to bolster that proposition. Much of that evidence
was reiterated in his appellate brief, and included such things as the companyâs name
being on his pay stubs and the representations contained in the letter offering him
employment. And, as acknowledged in our original opinion, that summary judgment
evidence and argument he proffered may well have induced the trial court to accept Xcelâs
contention that his sole means of redress was through Xcelâs workersâ compensation policy
since he actually was an Xcel employee. This potentiality, in turn, obligated him to prove
to us why the trial court would have been wrong had it so concluded.
Â Â Â Â Â Â Â Â Â Â Simply put, acknowledging, on appeal, that an opponent may be right does not
necessarily make the trial courtâs decision wrong. Indeed, there have been instances
where we affirmed a trial courtâs application of the law even though both parties agreed that
it was wrong. E.g. Finney v. State, No. 07-99-0427-CR, 2000 Tex. App. LEXIS 3909 (Tex.
App.âAmarillo June 14, 2000, no pet.) (not designated for publication). So, by attempting
to prove though admirable effort a pivotal aspect of his opponentâs argument (i.e. that he
was an employee of Xcel which in turn subjected him to Xcelâs workersâ compensation
policy), Hall assumed the appellate burden of showing as a matter of law why the trial court
would have been wrong in accepting his own contention. And that, he did not do.
Â Â Â Â Â Â Â Â Â Â Accordingly, we deny his motion for rehearing.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Brian Quinn
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice



s unaware of the details of what ensued between the crowd and Appellant and
his friends.

 Appellant's friends, Chad and Aaron, both testified that Arriaga's group was
brandishing pool cues and knives and chasing them. Appellant, Chad, and Aaron ran back
to the truck and backed out of an angled parking space as the crowd was yelling and hitting
the truck. According to Chad, the natural direction to drive after backing out of the angled
parking space was away from Arriaga's group. However, both Chad and Aaron testified
that Appellant turned the truck around after backing out of the space so as to face the
crowd he and his friends were fleeing from. Being unable to make a right turn onto the
street because of the crowd, Appellant and his friends avoided the crowd by jumping a curb
and driving through the bar parking lot. This resulted in Garcia being struck by the truck.

 From the circumstantial evidence presented, the jury could have inferred that
Appellant was aware of, but consciously disregarded, the substantial and unjustifiable risk
of fleeing from a crowd in a truck, jumping over a curb, and driving through the bar parking
lot. Appellant disregarded the easiest exit from the shopping center parking lot by backing
out of the parking space and turning the truck around so as to face the crowd his friends
claimed they were trying to avoid. Appellant acted recklessly and created the risk of
striking a pedestrian by driving toward a crowd instead of exiting the parking lot in the
opposite direction, which would have been the natural direction to take.

 Although the evidence is conflicting on whether weapons were brandished and who
instigated the confrontation, the jury, as the trier of fact, determined that Appellant struck
Garcia and that, at that time, he had the requisite mental state to be convicted of
aggravated assault. We conclude that under Jackson, the evidence was legally sufficient
to support Appellant's conviction. Issue one is overruled.

 Appellant asserts that the evidence supports his conclusion that Garcia's injuries
were the result of a "terrible accident" and that he did not have the requisite criminal intent
to commit the offense of aggravated assault. From a review of the most important and
relevant evidence discussed hereinabove, (3) we cannot conclude under Watson, that
Appellant's conviction was "clearly wrong" or "manifestly unjust." Thus, the evidence is
also factually sufficient to support Appellant's conviction. Issue two is overruled.

 By his third and final issue, Appellant contends the trial court erred in overruling his
objection to photographs of Garcia's injuries based on Rule 403 of the Texas Rules of
Evidence. We disagree. 

Standard of Review-Rule 403


 A trial court's ruling in response to a Rule 403 objection is reviewed for abuse of
discretion. State v. Mechler, 153 S.W.3d 435, 439 (Tex.Crim.App. 2005). The test for
whether the trial court abused its discretion is whether the action was arbitrary or
unreasonable. Id. We will not reverse the trial court's ruling if it is within the zone of
reasonable disagreement. Id. at 440. In determining whether the probative value of
evidence is substantially outweighed by the danger of unfair prejudice, a court should
consider (1) the probative value of the evidence; (2) the potential to impress the jury in
some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the
proponent's need for the evidence. Erazo v. State, 144 S.W.3d 487, 489 (Tex.Crim.App.
2004).

 In determining the prejudicial effect of photographs, courts may consider the number
of photographs offered; their gruesomeness, detail, and size; whether they are in color;
whether they are taken close-up; whether the person in the photograph is clothed; and any
other factors unique to the situation. Shuffield v. State, 189 S.W.3d 782, 787
(Tex.Crim.App. 2006); Long v. State, 823 S.W.2d 259, 270 (Tex.Crim.App. 1991).

 Outside the jury's presence, the trial court heard Appellant's objections to State's
Exhibits 19 through 28 depicting Garcia's severe facial injuries. The objections were based
on Rules 401, 402, and 403 of the Texas Rules of Evidence. (4) Of the ten photographs, the
trial court permitted the State to select one photograph from three separate groups
showing three different angles of Garcia's face. The State chose Exhibits 20, 23, and 26,
and Appellant's objections to those photographs were overruled.

 All three photographs are approximately three by five inches and show only Garcia's
face. Exhibit 20 is a right center view of her face; Exhibit 23 is a frontal view of her face;
and Exhibit 26 shows the left side of her face. Although the photographs in the appellate
record appear in black and white, we will assume they were presented to the jury in color. 
See Shuffield, 189 S.W.3d at 787. The photographs were taken by Dr. John Marchbanks
just prior to performing surgery. Dr. Marchbanks testified that he was called in to consult
on Garcia's facial injuries, but did not offer any testimony describing the injuries.

 Serious bodily injury is an element of aggravated assault the State was required to
prove. § 22.02(a) (1). The photographs were offered into evidence for the purpose of
establishing that element. Appellant, however, argues that their admission was cumulative
because a paramedic and a police officer who were dispatched to the scene gave graphic
descriptions of Garcia's injuries during their testimony. He further urges that Garcia's
injuries were obvious when she testified. Appellant contends that the probative value of
the photographs was outweighed by their prejudicial effect. However, as the State points
out, the photographs actually served to soften the testimonials of Garcia's injuries. 

 The paramedic testified that he had never seen trauma like that sustained by
Garcia. He described her face as disfigured, "literally ripped apart." He continued that her
features were unrecognizable. He did not know where her mouth was and her nose was
"just shredded." He didn't know if her eye had been ripped out. One of the responding
police officers testified that Garcia's face looked like it "exploded." The objected-to
photographs, on the other hand, depict Garcia's face cleaned up in preparation for surgery. 
They show Garcia's injuries in a less gruesome manner than described by the testimony
of the paramedic and police officer.

 Photographs provide powerful visual evidence of an offense. See Sonnier v. State,
913 S.W.2d 511, 519 (Tex.Crim.App. 1995). A trial court does not abuse its discretion in
admitting into evidence gruesome photographs of a victim. Id. We conclude the
photographs were relevant and were not overly gruesome, and the trial court did not abuse
its discretion in admitting them. Issue three is overruled.

 Consequently, the trial court's judgment is affirmed.


 Patrick A. Pirtle

 Justice



Do not publish.
1. At the time of trial, Kelli and Appellant were married; however, through voir dire
testimony it was established that they were not married at the time of the incident and thus,
no spousal privilege applied to any communications made at that time.
2. Although the statute is worded disjunctively, Appellant was indicted for causing
serious bodily injury and using a deadly weapon. The court's charge tracks the indictment.
3. Sims v. State, 99 S.W.3d 600, 600-601 (Tex.Crim.App. 2003); Roberts v. State,
221 S.W.3d 659, 665 (Tex.Crim.App. 2007).
4. On appeal, Appellant limits his argument to Rule 403.